IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | |
|---|---|
| JULIA PENN, | ) CASE NO.1:19-CV-00389 |
| | ) |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| v. | ) |
| | ) MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL | ) ORDER |
| SECURITY, | ) |
| | ) |
| Defendant. | |

## Introduction

Before me[1] is Julia Penn's action for judicial review of the 2018 decision of the Commissioner of Social Security that denied Penn's application for supplemental security income benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to terms of my order,[5] the parties have briefed their positions,[6] exchanged fact sheets[7] and jointly conferred as to potentially narrowing the

---

[1] The parties have consented to my exercise of jurisdiction. ECF No. 13.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 11.
[6] ECF Nos. 12 (Penn), 18 (Commissioner), 19 (reply Penn).
[7] ECF Nos. 18, attachment 1 (Commissioner), 23 (Penn).

1

issues on review.[8] They have participated in a telephonic oral argument.[9] Following that argument, the parties have submitted additional briefs.[10]

For the following reasons the Commissioner's decision will be affirmed.

## Facts

Initially, I note that in 2011 Penn applied for and was denied SSI benefits.[11] The ALJ here concluded that although Penn had the same severe impairments in 2018 as in 2011, new evidence since that 2011 decision supported a different residual functional capacity in 2018.[12]

Specifically, Penn, who was 50 years old at the time of the 2018 hearing,[13] had the following severe impairments: epilepsy, osteoarthritis of the left knee, obesity and major depressive disorder.[14] The ALJ also found that none of the impairments met or medically equaled a listing.[15] The ALJ determined that Penn had an RFC to perform light work with some postural, environmental and mental limitations.[16] In particular as to mental limitations, the RFC stated that Penn only had mental restrictions as to no strict production

---

[8] ECF No. 20.
[9] ECF No. 26.
[10] ECF Nos. 27 (Commissioner), 28 (Penn).
[11] ECF No. 10 (transcript) at 16.
[12] *Id.*
[13] *Id.* at 6.
[14] *Id.* at 19.
[15] *Id.* at 19-21.
[16] *Id.* at 21.

quotas, occasional decision making, and occasional interaction with the public, co-workers and supervisors.[17]

In forming the RFC's mental limitations the ALJ gave great weight to the opinion of a state agency consultant at the reconsideration level who stated that Penn could work in an environment with no production quotas and only occasional interaction with the public and supervisors.[18] She gave partial weight to the opinions of two non-physician medical providers who stated that Penn would be off-task eight hours in an eight-hour work day, as well as being unable to function in a competitive work environment.[19] But she made no reference at all to opinion and treatment records of Dr. Rakesh Ranjan, M.D., Penn's treating physician.[20]

In that regard, Penn contends that the failure to analyze Dr. Ranjan's opinion within the opinion was error because it failed to provide any basis for meaningful judicial review.[21] She also maintains that the assignment of partial weight to the opinions of non-physician medical providers was also error in that the ALJ failed to articulate legally sufficient good reasons for that weight.[22]

The Commissioner asserts that the mere failure to mention or assign weight to the opinion of a treating source is not necessarily grounds for a remand. In particular, the

---

[17] *Id.*
[18] *Id.* at 25.
[19] *Id.*
[20] See, ECF No. 15 at 3.
[21] *Id.* at 9.
[22] *Id.* at 11.

Commissioner notes, when the ALJ essentially adopts the functional opinion of a source, any failure to discuss that source is harmless error.[23] Further, the Commissioner maintains that any analysis of an ALJ's opinion that fails to discuss a treating source opinion is done under the substantial evidence standard and so does not require the reviewing court to undertake *de novo* review.[24] Finally, the Commissioner contends that Dr. Ranjan's "vague statements" about mental symptoms did not actually represent a functional mental limitation that needed to be considered in fashioning the RFC.[25]

**Analysis**

I begin by noting that Dr. Ranjan is a psychiatrist who began treating Penn in April 2016[26] and submitted his opinion in October 2016.[27] That opinion began with a diagnosis of "bipolar disorder, current episode mixed, severe with psychotic features."[28] It then stated that this condition manifested itself as mood swings, moderate irritability, racing thoughts, low energy and severe constricted affect.[29] Dr. Ranjan went on to detail Penn's medications for depression, panic attacks, chronic pain and bipolar episodes.[30] He stated that she has been compliant with her medications and had kept her appointments.[31] Finally, he opined as to physical limitations that Penn could not bend, lift, stoop or pick up items heavier than

---

[23] ECF No. 27 at 2 (citing cases).
[24] *Id*. at 4 (citing cases).
[25] *Id*. at 5.
[26] Tr. at 624.
[27] *Id*. at 672-74.
[28] *Id*. at 673.
[29] *Id.*
[30] *Id.*
[31] *Id.*

4

20 pounds.[32] As to mental limitations, Dr. Ranjan stated that Penn's symptoms impaired her concentration and attention with poor mood and low energy.[33]

I further note that the opinions of Adriana Green, Penn's mental health counselor, and Rayshawn Smith-Williams, a certified nurse practitioner, are more detailed. This joint opinion from December 2017 states that Penn had no ability to function around co-workers or peers without distracting them or exhibiting behavioral extremes.[34] Further, they stated that Penn:

(1) could not work in a competitive work environment;

(2) could not complete normal workday without interruptions from psychological symptoms;

(3) could not work a consistent pace without an unreasonable number of interruptions;

(4) could not remember work locations, procedures or detailed instructions; and

(5) could not accept criticism and instruction from supervisors, maintain socially appropriate behavior or respond appropriately to changes in the workplace.[35]

<u>Dr. Ranjan</u>

---

[32] *Id*. at 674.
[33] *Id.*
[34] *Id*. at 1021.
[35] *Id*.

5

With these opinions in mind, I observe first that any discussion of whether the failure of an ALJ to mention a treating source opinion is harmless error contains the unspoken premise that such failure would be error without some other justifying reason. Indeed, the applicable case law is clear that at a minimum the ALJ on the record must assign weight to a treating source opinion and give reasons for assigning that weight that are reviewable. Alternatively, there are specific instances where harmless error does apply

I observe further as regards harmless error that this is not a situation where failure the goal of the treating source regulation is otherwise satisfied.[36] Here, the ALJ did not identify Dr. Ranjan or discuss his opinion, much less was there any weight given to that opinion or any reasons given for weight. Moreover, the Commissioner does not assert that the opinion as to mental issues was so patently deficient as to not merit analysis.[37] I will return later to this basis for harmless error.

The Commissioner maintains that any failure to specifically mention Dr. Ranjan was harmless because the ALJ implicitly adopted Dr. Ranjan's mental limitations opinion, or at least made findings consistent with it.[38] The Commissioner contends that Dr. Randan's statements about impaired concentration/attention, poor mood and low energy

---

[36] See, *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).
[37] The Commissioner argues that any opinion by Dr. Ranjan on Penn's physical limitations deserved no weight because Dr. Ranjan never treated or examined Penn's physical condition since his specialty was psychiatry. ECF No. 18 at 7. The Commissioner further argues that even if it was error to not credit the physical limitation, the error was harmless because two of the three jobs identified by the VE would not be affected by including Dr. Ranjan's physical limitation in the RFC. ECF No. 18 at 9. This conclusion is supported by the record.
[38] ECF No. 18 at 5.

were vague and unquantified, but nevertheless would not have changed the RFC even if they were adopted.[39]

For example, the Commissioner notes that the ALJ found that Penn has a moderate limitation in concentration, persistence and pace, which resulted in an RFC with no strict production requirements and only occasional decision-making requirements.[40] Absent further specificity, the Commissioner contends this is consistent with Dr. Ranjan's opinion, as well as that of the state agency reviewer.[41]

In addition, the Commissioner contends that the RFC's finding of a moderate limitation on interaction with others is consistent with Dr. Ranjan's non-specific opinion that Penn has difficulty with her mood.[42]

Finally, as noted above, the Commissioner contends that even if both the mental and physical limitations contained in Dr. Ranjan's opinion were incorporated into the RFC, the result would not change. Specifically, the RFC's mental restrictions are consistent with Dr. Ranjan's opinion. In addition, the Commissioner states that the VE's determination that Penn could perform the jobs of garment sorter and mail clerk is consistent with Dr. Ranjan's opinion as to Penn's physical limitations.[43]

---

[39] Id.
[40] *Id.* (quoting transcript).
[41] *Id.* at 6.
[42] *Id.*
[43] ECF No. 27 at 5.

I note initially that while the Commissioner maybe correct in observing that the RFC may now be understood as not contradicting anything Dr. Ranjan said in the area of mental limitations, this conclusion is only possible by first divining that specific functional limitations actually exist in the vague, non-specific statements of Dr. Ranjan and then inferring that the ALJ performed that same conjuring act when he gave no written evidence of doing any such thing.

This process is suspiciously close to simple *post-hoc* rationalization, whereby the Commissioner constructs the analysis for the ALJ instead of pointing to where the ALJ's analysis already exists on the record.

That said, the plain fact is that Dr. Ranjan's mental status opinion was patently deficient in that it gave no actual functional limitations. As is set out above, the language of the opinion, as to mental status, basically consists of re-stating the diagnosis, plus statements to the effect that Penn was diligent in adhering to her medication regimen. However, "the mere diagnosis of disorder is not the equivalent of limitations flowing from that disorder …."[44]

Thus, without stating any functional limitations flowing from his diagnosis, Dr. Ranjan has not provided an opinion that can be of any use to the ALJ in fashioning an RFC as to Penn's mental limitations. Accordingly, as noted, the regulations explicitly provide that an ALJ is not required to address such a patently deficient opinion in the decision.

---

[44] *Shaw v. Astrue*, 2014 WL 6085687, at * 4 (S.D. Ohio Nov. 13, 2014) (citation omitted).

In sum, for the reasons stated, I find no error in the way the ALJ dealt with Dr. Ranjan's opinion.

Opinions of Adriana Green and Dewan Smith-Williams

As noted above, the ALJ gave the appropriate credentials for Green and Smith-Williams and further identified them as having treated Penn, although, because they are not acceptable medical sources, they were not "treating sources" under the regulations.[45] The ALJ then assigned only partial weight to their functional opinions, citing as reasons that this opinion gave "extreme" limitations that were not supported by Penn's treatment record, treatment notes or mental status examinations.[46] The ALJ especially noted that Penn had required no hospitalizations or inpatient treatment during the relevant period, and that treatment notes show that she has been responsive to medication.[47] She also observed that Penn's mental status examinations have been largely unremarkable.[48]

As the product of other than an acceptable medical source, the opinions here are entitled to consideration by the ALJ.[49] The ALJ should explain the weight given to such an opinion so as to allow for meaningful judicial review.[50] In so doing, the ALJ should discuss such factors as the length of the treating relationship, the consistency of the opinion with

---

[45] See, 20 C.F.R. § 416.902(a) – listing sources that qualify as acceptable medical sources.
[46] Tr. at 25.
[47] *Id*.
[48] *Id*.
[49] *Cole v. Astrue*, 661 F.3d 991, 939 (6th Cir. 2011).
[50] *Brock v. Calvin*, 2013 WL 4501333, at * 6 (M.D. Tenn. Aug. 22, 2013).

9

other evidence of record and how well the source explains the opinion.[51] In the end, however, the requirement for explaining the weight given to such other source opinions is not required to meet the "good reasons" requirement that pertains to opinions from acceptable medical sources.[52]

Here, the ALJ, as noted, met the standard for explaining the weight given to the opinions of the two non-acceptable sources. In particular, the ALJ was clear as to why the opinion that Penn had virtually no ability to function in more than half of the assessed areas and would be off-task for an entire eight-hour work day was "extreme" when viewed against the fact that Penn had not required hospitalization or in-patient treatment, had been responsive to her medication and had unremarkable mental status examinations.

I also find no error in how the ALJ assessed the opinions of Green and Smith-Williams.

## Conclusion

For the reasons given, the decision of the Commissioner is affirmed.

IT IS SO ORDERED

Dated: March 18, 2020          s/William H. Baughman Jr.
                               United States Magistrate Judge

---

[51] *Id.*
[52] *Leach v. Comm'r of Social Security*, 2015 WL 1221925, at *3 (N.D. Ohio March 17, 2015)(citation omitted).